```
IN THE UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF PUERTO RICO
```

JOSE GUSTAVO MOELLER TEVEZ,
et al.,

    Plaintiffs,

    v.

ALLMERICA FINANCIAL LIFE
INSURANCE AND ANNUITY COMPANY,

    Defendant.

CIVIL NO. 01-2095 (RLA)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant, ALLMERICA FINANCIAL LIFE INSURANCE AND ANNUITY COMPANY ("ALLMERICA"), has moved the Court to enter summary judgment on its behalf and to dismiss the instant complaint. The Court having reviewed the memoranda submitted by the parties as well as the evidence attached therewith hereby finds that summary judgment is warranted under the facts as presented in this case.

**BACKGROUND**

This is an action to recover death benefits under a life insurance policy (the "Policy") issued by ALLMERICA to the deceased, CARLOS A. MOELLER-TEVEZ (the "Insured"), filed by the beneficiaries under the Policy, i.e., JOSE GUSTAVO MOELLER-TEVEZ and ADOLFO MOELLER-SUAREZ, brother and uncle respectively, of the Insured.

ALLMERICA denied the claim for death benefits under the Policy based on its Suicide Exclusion Clause. Defendant further denied coverage claiming that the Insured had made material misrepresentations in the application for insurance.

**SUMMARY JUDGMENT**

Rule 56(c) Fed. R. Civ. P. sets forth the standard for ruling on motions for summary judgment. *See*, Sands v. Ridefilm Corp., 212 F.3d 657, 660-61 (1st Cir. 2000). It is well settled, that in ruling on a motion for summary judgment, the Court reviews the record in the light most favorable to the plaintiffs and draws all reasonable inferences in their favor. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993), *cert. denied*, 511 U.S. 1018 (1994).

The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. *See*, Fed.R.Civ.P. 56(c); Celotex Corp. v. Catred, 477 U.S. 317; 106 S.Ct. 2548; 91 L.Ed.2d 265 (1986). A genuine issue exists if there is sufficient evidence supporting the claimed factual disputes to require a trial. Morris v. Gov't Dev. Bank of Puerto Rico, 27 F.3d 746, 748 (1st Cir. 1994); LeBlanc v. Great Am. Ins. Co., 6 F.3d at 841. A fact is material if it might affect the outcome of a lawsuit under the governing law. Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir. 1995).

In cases where the non-movant party bears the ultimate burden of proof, he must present definite and competent evidence to rebut a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-257; 106 S.Ct. 2509; 91 L.Ed.2d 202 (1986). The non-movant cannot rely on "conclusory allegations, improbable inferences, and unsupported speculation." Lopez-Carrasquillo v. Rubianes, 230

**CIVIL NO. 01-2095 (RLA)**                                                              **Page 3**

F.3d 409, 412 (1st Cir. 2000); <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 581 (1st Cir. 1994); <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990). After an adequate period of time for discovery, reliance upon pure speculation is unacceptable. "Plaintiffs are required to garner either direct or circumstantial evidence to back upon their legal claims." <u>Dominguez v. Eli Lilly and Co.</u>, 958 F. Supp. 721 (D.P.R. 1997), *aff'd* 141 F.3d 1149 (1st Cir. 1998). The facts included in the documents and the materials attached to a motion for summary judgment, as well as to the opposition papers, must be admissible in evidence. <u>Horta v. Sullivan</u>, 4 F.3d 2, 7-8 (1st Cir. 1993).

### THE FACTS

The Court finds that the following proposed facts as submitted by the defendant are uncontested.[1]

---

[1] We deem plaintiffs' objections to the facts as proffered by ALLMERICA defective pursuant to Local Rule 311.12 - now Local Rule 56(c) in that they failed to adequately contradict the averments presented by ALLMERICA. Rather, plaintiffs have, in a generalized fashion, raised legal and evidentiary objections either to their admissibility or to the proposed inferences to be derived from those facts. These objections will be addressed when disposing each of the arguments submitted by ALLMERICA in support of its summary judgment request.
   Further, with regard to plaintiffs' own proffered facts on: (1) the presence of bullet shells in decedent's apartment, (2) investigation conducted by tourism police, (3) the chemical report of the Puerto Rico Institute of Forensic Sciences and (4) a private investigation report contracted by plaintiffs as more fully discussed in this Order, these do not constitute an impediment for the Court to enter summary judgment on defendant's behalf.

**CIVIL NO. 01-2095 (RLA)** **Page 4**

1. On or about October 27, 1995, CARLOS A. MOELLER-TEVEZ submitted to ALLMERICA an application for a life insurance policy.

2. The Insured was born on November 5, 1974. As of the date of the application, the Insured was nineteen (19) years old.

3. Item 4 of Part II of the Application specifically asked the Insured whether "[d]uring the past 5 years [he had] used marijuana, cocaine, barbiturates, narcotics, excitants or hallucinogens, except as prescribed medication". The Insured responded "no" to said question.

4. Pursuant to the Application and in reliance upon the truth of the statements, answers and representations made therein, on or about February 7, 1996, ALLMERICA issued its policy number V 612,436 on the life of the Insured. In the event of the Insured's death, the Policy provides for payment to the beneficiaries of the face amount of $400,000, plus the cash value of the Policy, as more fully set forth in the Policy.

5. The Policy contains a "Suicide Exclusion" clause that provides, in relevant part, as follows:

> The risk of suicide of the insured, while sane or insane, within two years of the date of issue of this policy is not assumed. Instead of the death benefit, the beneficiary will receive the sum of the premiums paid, less the sum of any outstanding debt and partial withdrawal amounts.

**CIVIL NO. 01-2095 (RLA)**                                                          **Page 5**

6.  The Policy has a two-year period during which ALLMERICA may contest liability of the Policy.
7.  The designated beneficiaries of the Policy are plaintiffs, JOSE GUSTAVO MOELLER TEVEZ and ADOLFO MOELLER SUAREZ, brother and uncle of the Insured, respectively.
8.  DR. SAMADYS DUCOUDRAY is a psychiatrist who rendered professional services at First Hospital Panamericano from approximately July 1996 through August 1997, evaluating and treating patients at said institution.
9.  On March 13, 1997, the Insured admitted himself to First Hospital Panamericano for detoxification of a chemical dependency to cocaine and heroin.
10. DR. DUCOUDRAY evaluated the Insured on March 14, 1997, and treated or "followed" him during his stay at First Hospital Panamericano.
11. The initial diagnosis of the Insured at the time of the psychiatric evaluation carried out by DR. DUCOUDRAY on March 14, 1997, was "heroin and cocaine dependence as a diagnosis with a secondary diagnosis that is substance induced mood disorder, depressive type."
12. The Insured's history - as taken by DR. DUCOUDRAY during decedent's initial psychiatric evaluation - in relevant part reads:

**CIVIL NO. 01-2095 (RLA)**                                                                 **Page 6**

>       Single, masculine patient, came for treatment due to his dependency on heroin and cocaine. Patient reports that he commenced using marihuana at age 18 and reports not using it at present. The patient reports that he commenced use of cocaine at age 16 and reports using 1-2 bags daily, nasally (was the first drug that he used). Patient reports having commenced the use of heroin at age 16 and reports using 10 bags daily, nasally.

13. The Insured stated in the patient's questionnaire filled out upon his entry to First Hospital Panamericano, that he "had no desire to continue living, didn't sleep" and "was sad much of the time".

15. The Insured died on June 18, 1997, at Carolina, Puerto Rico, approximately three (3) months after his hospitalization at First Hospital Panamericano and sixteen (16) months after issuance of the Policy.

16. The Insured's body was found by his uncle, plaintiff ADOLFO MOELLER SUAREZ, with a shot to his head.

17. The autopsy of the Insured performed by DR. LYVIA ALVAREZ, forensic pathologist at the Puerto Rico Institute of Forensic Sciences, indicates that the Insured died as a result of a

**CIVIL NO. 01-2095 (RLA)**                                                                  **Page 7**

bullet wound to his head, with entrance and exit orifices "compatible with a suicide."

18. The toxicological analysis of the Insured's body fluids performed at the Institute as part of the autopsy examination, was positive for opiates, cannabinoids, morphine and monoacetilmorphine.

19. The Death Certificate of the Insured signed by DR. ALVAREZ certifies: (1) the immediate cause of death (or condition which resulted in death) as "bullet wound to the head"; (b) "type of death" as "compatible with suicide", and (c) "how the injury occurred" as "took his life with a firearm".

20. Based upon the Police investigation, the autopsy and ballistics reports, the Carolina district attorney determined that "everything tends to indicate that the manner of the [Insured's] death is compatible with suicide" and recommended that the investigation be closed.

21. Plaintiffs submitted to ALLMERICA a claim for the death benefits under the Policy. On August 26, 1998, ALLMERICA notified the plaintiffs, in writing, that their claim was being denied in accordance with the Suicide Exclusion provision of the Policy and enclosed two (2) checks for $2,492.21 each, payable to the order of plaintiffs, representing their respective share of the premiums refunded plus interest thereon as of the date of the Insured's death.

**CIVIL NO. 01-2095 (RLA)**                                                          **Page 8**

22. On or about October 18, 1998, ALLMERICA received a letter from IRIS Y. APONTE ANDINO, counsel for plaintiffs, returning the aforementioned checks, on the grounds that they were contesting suicide as the cause of the Insured's death.

23. On February 9, 2000, ALLMERICA wrote to plaintiff's counsel confirming its prior denial of the plaintiffs' claim, and enclosing copy of the Autopsy Report and two new checks covering the premiums refunded in accordance with the Policy's Suicide Exclusion clause.

24. Plaintiff ADOLFO MOELLER SUAREZ admitted that he did not know "of anyone who saw [the Insured] dying" or "how he [the Insured] died".

25. REINALDO CASTELLANOS-FERNANDEZ, a witness identified by the plaintiffs, a next door neighbor, purportedly having knowledge about the Insured's death, admitted that he learned of the Insured's death after arriving home from work on June 18, 1997, when plaintiff ADOLFO MOELLER SUAREZ knocked on his door and asked him to come over to decedent's apartment because the Insured was on the floor and appeared to be dead.

26. Plaintiff JOSE GUSTAVO MOELLER TEVEZ, decedent's brother, testified that he had last seen the Insured alive about a week before his death.

27. Plaintiff JOSE GUSTAVO MOELLER TEVEZ also admitted that he did not know of anyone who had witnessed decedent's death nor the cause of his death.

### SUICIDE EXCLUSION

The Policy specifically excludes benefits in the event of the Insured's suicide if committed within the first two (2) years of its issuance. In such instances, rather than payment of the death benefits any remaining premiums paid thus far together with interest accrued will be returned to the beneficiaries. To this effect the Policy reads:

> The risk of suicide of the insured, while sane or insane, within two years of the date of issue of this policy is not assumed. Instead of the death benefit, the beneficiary will receive the sum of the premiums paid, less the sum of any outstanding debt and partial withdrawal amounts.

Even though exclusion clauses should be strictly construed these will be enforced if its language is explicit and there is no room for interpretation which would run contrary to the obligations under the contract. As stated by the Puerto Rico Supreme Court:

> If the policy's terms, conditions and exclusions are clear and specific, and are not open to ambiguities or to different interpretations, they should be applied. This Court has repeatedly held that insurance contract clauses are binding if free from ambiguity in their interpretation.

**CIVIL NO. 01-2095 (RLA)**                                                                **Page 10**

---

Garcia Curbelo v. A.F.F., 127 D.P.R. 747, 760 (1991) (footnote omitted).

Plaintiffs cannot seriously argue that the suicide exclusion clause at issue in this litigation is not clear and straightforward. Hence, there is no legal impediment to its application. Further, the Insured was found dead approximately sixteen (16) months subsequent to the Policy being issued.[2] Thus, the aforementioned exclusion was still in force at the time.

Pursuant to P.R. Laws Ann. tit. 24, § 1103(22) (2002), in cases of violent deaths the corresponding death certificate must specify whether the demise resulted from either an "accident, suicide or homicide". According to the certificate issued by the Puerto Rico Registry of Vital Statistics as a result of the Insured's demise, his death was "compatible with suicide" in that the Insured "took his life with a firearm." Once duly certified by the proper authority, a death certificate "shall become prima facie evidence of the facts stated therein before any court of justice." P.R. Laws Ann. tit. 24, § 1237 (2002). *See i.e.*, In re Hon. Gonzalez Porrata-Doria, 158 D.P.R. 150, 159 (2002) (marriage certificate issued by the Registry of Vital Statistics is proof of the circumstances appearing in the certificate inasmuch as it constitutes prima facie evidence of the marriage pursuant to law).

---

[2] The Policy was issued on February 4, 1996, and the Insured died on June 18, 1997.

**CIVIL NO. 01-2095 (RLA)**                                                              **Page 11**

However, information contained in the pertinent Registry records is subject to challenge by way of adequate evidence. "The proof of age as appears from the certificate issued by the Registry of Vital Statistics can be overcome by other evidence which may carry to the mind of the trier of facts the conviction that the date of birth of a person is other than that stated therein. Of course, said evidence must be weighed according to the credibility of the witnesses and the probatory value of the documents admitted." Bigas v. Com. Industrial, 71 P.R.R. 313, 319-20 (1950). *See also*, Castro v. Negron, 159 D.P.R. 568, 615 (2003) (information in recordings appearing in Registry of Vital Statistics constitute prima facie evidence which may be questioned through appropriate proof); Caraballo v. Sec'y of Health and Human Serv., 670 F. Supp. 1106, 1107 (1987) (proof of age in certificate "can be overcome by other evidence which may carry to the mind of the trier of facts the conviction that the date of birth of a person is other than that stated therein.")

Plaintiffs attempt to undermine the death certificate's conclusion that the Insured's cause of death was suicide by pointing to a chemical analysis carried out by REYNALDO VILLANUEVA GONZALEZ, a forensic chemist employed by the Puerto Rico Institute of Forensic Sciences, who concluded that there were no substantial amounts of chemical components in decedent's hands which could be associated to the firing of a gun. The relevancy of this information was explained in a sworn statement prepared by HECTOR CASIANO FIGUEROA, a private

**CIVIL NO. 01-2095 (RLA)**                                                              **Page 12**

investigator hired by plaintiffs to inquire as to decedent's cause of death. However, the declarant's conclusions in this regard constitute expert opinion and plaintiffs were precluded from presenting expert testimony in this action.[3] Accordingly, we may not take the views of MR. CASIANO FIGUEROA into consideration for purposes of the outstanding summary judgment request.

Plaintiffs further note that MR. CASTELLANOS, decedent's neighbor, saw bullet shells in the Insured's apartment at the time of his death and suggest it is evidence that decedent did not commit suicide. The police report noted that a bullet shell and a deformed fire projectile were found in the apartment. Hence, contrary to plaintiffs' position this information was part of the scene investigation and does not automatically nullify the suicide conclusion reached by the police.

Plaintiffs further argue that the official investigation was not adequate because it was carried out by a police tourist unit with no expertise in the matter. However, according to the records submitted, members of the police homicide division also participated in the probe.

Based on the foregoing, we conclude that plaintiffs have failed to present sufficient evidence to overcome the conclusion that the

---

[3] See, Order filed on July 8, 2002 (docket No. 28) excluding plaintiffs' expert witnesses.

**CIVIL NO. 01-2095 (RLA)**                                                                 **Page 13**

Insured's death was other than due to suicide as stated in his death certificate.

## MATERIAL MISREPRESENTATIONS

The Puerto Rico Insurance Code in its art. 11.100 provides that misrepresentations made by applicants to insurance policies may result in rescission of a policy provided the misrepresentations were "material... to the acceptance of the risk" or "the insured in good faith would... not have issued the policy" and such misrepresentations "or omissions contributed to the loss that gave rise to the action." P.R. Laws. Ann. tit. 26, § 1110 (2004).

It is patently clear from the evidence submitted by ALLMERICA that decedent provided untrue information when procuring the Insurance. In his October 1995 application decedent indicated that during the preceding five-year period he had not used marihuana, cocaine, barbiturates, narcotics, excitants or hallucinogens. However, plaintiff voluntarily hospitalized himself into Hospital Panamericano in March 1997 for detoxification of a chemical dependency to cocaine and heroin. According to the Hospital records, plaintiff notified DR. DUCOUDRAY, his psychiatrist during his stay, that he had commenced using marihuana at age 18 (one year prior to the application date) and cocaine and heroin at age 16 (three years prior to the application date). Thus, it is evident that decedent supplied false information to ALLMERICA in his insurance application form.

**CIVIL NO. 01-2095 (RLA)**                                                                 **Page 14**

However, as previously noted, art. 11.100 further requires that the erroneous information provided by the decedent in his application "contribute[] to the loss that gave rise to the action" in order for the insurer to rescind the contract. In other words, that there be a connection between the misrepresentation made in decedent's application and his death.

The Puerto Rico Supreme Court has explained this particular provision as follows:

> Thus, we can see that the purpose of the last paragraph is to broaden the concept of relevance. The policy is void when the false statement or the omitted information is relevant not only to the evaluation of the risk but also to its occurrence. The contribute-to-loss clause requires a nexus - whose nature may necessarily vary, depending on the type of insurance - between an inaccurate statement and the loss object of the action.

Serrano Ramirez v. Clinica Perea, 108 D.P.R. 477, 8 P.R. Offic. Trans. 503, 510 (1979).

### Cause of Death

According to the psychiatric evaluation at First Hospital Panamericano approximately three (3) months prior to his death, decedent described using 1-2 bags of cocaine nasally per day and 10 bags of heroin nasally per day. Additionally, he reported having ideas about killing himself and noted that a few weeks back thought

about killing himself with a gun but abstained himself. The diagnosis at First Hospital Panamericano was heroin and cocaine dependence; depression caused by substance dependence. DR. DUCOUDRAY acknowledged that drug dependency and a depressive disorder can lead to or constitute a factor in a person's decision to commit suicide. We find the aforementioned information constitutes sufficient evidence to allow for a causal connection between drug use and decedent's death as required by art. 11.100.

Plaintiffs reject ALLMERICA's arguments for recision on privacy grounds alleging that the information provided by decedent to his psychiatrist is privileged. According to Rule 501 Fed. R. Evid. privileges will "be determined in accordance with State Law" in suits based on diversity jurisdiction such as the one currently before us.

In Puerto Rico the physician-patient relationship is protected under Rule 26 P.R. Rules of Evid., P.R. Laws Ann. tit. 32, App. IV (2000). This privilege, however, ceases when "[t]he patient's condition is an element of his claim or defense, or of the claim or defense of any person claiming through or under the patient as a beneficiary of the patient through a contract to which the latter is or was a party." Rule 26(C)(8). This is precisely the situation at hand where decedent's mental condition lies at the crux of the insurance coverage claim.

Plaintiffs' objections on hearsay grounds fare no better. Information given to healthcare providers in the context of supplying

medical treatment constitutes a hearsay exception. Rule 803(4) Fed. R. Evid. specifically excludes: "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history". "In general, under Rule 803(4), 'the declarant's motive to promote treatment or diagnosis is the factor crucial to reliability.'" Bucci v. Essex Ins. Co., 393 F.3d 285, 298 (1st Cir. 2005) (citing Danaipour v. McLarey, 386 F.3d 289, 297 (1st Cir. 2004)).

Plaintiffs further attempt to undermine the admissibility of the death certificate arguing that it is unreliable because it purportedly did not take into consideration the forensic chemist's report on the chemical residuals of a gunshot. This position is speculative. No trustworthy evidence has been submitted in support thereof.

Accordingly, we conclude that based on the evidence available to the court, there is a clear connection between decedent's misrepresentations regarding his prior use of drugs and his death which warrants recision of the insurance contract. Plaintiffs' arguments to the contrary are unavailing.

### Risk Assessment

Lastly, defendant has expressly indicated that it would not have issued the policy had it known of decedent's past drug use.[4] We find no reason to disregard ALLMERICA's position on this matter. Past drug

---

[4] See, Declaration of ALAN BOYER, Vice President Life Underwriting for the defendant.

**CIVIL NO. 01-2095 (RLA)**                                                            **Page 17**

use is patently relevant to the assessment of a risk by an insurer. Further, as previously discussed, there is a causal connection between this particular risk and decedent's death.

Accordingly, we find that ALLMERICA's decision to rescind the policy based on this provision was legally sound.

## CONCLUSION

Based on the foregoing, defendant's Motion for Summary Judgment(docket No. **55**)[5] is **GRANTED**.

Accordingly, it is hereby ORDERED that plaintiffs are not entitled to recover benefits under the Policy pursuant to its Suicide Exclusion Clause.

It is further ORDERED that given the Insured's material misrepresentations in the Application regarding prior drug use and their clear relationship with his death as well as ALLMERICA's risk assessment, the Policy is hereby **RESCINDED**.

Judgment shall be entered accordingly.

IT IS SO ORDERED.

San Juan, Puerto Rico, this 6th day of February, 2008.

                                            S/Raymond L. Acosta
                                              RAYMOND L. ACOSTA
                                    United States District Judge

---

[5] See, Plaintiffs' Motion in Opposition (docket No. **56**); Defendant's Reply (docket No. **57**) and Plaintiffs' Sur-Reply (docket No. **58**).